# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Trident Microsystems, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 12-10069 (CSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: January 13, 2012 at 4:00 p.m. (ET)**<br>**(Extended to Hearing Date for NXP)**<br>**Hearing Date: January 18, 2012 at 9:00 a.m. (ET)**<br>**Ref No. 14** |

**RESERVATION OF RIGHTS OF NXP SEMICONDUCTORS NETHERLANDS B.V. WITH RESPECT TO THE MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTIONS 105(A), 363 AND 365 OF THE BANKRUPTCY CODE FOR AN ORDER (I)(A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN OF THE DEBTORS' ASSETS RELATED TO THEIR SET TOP BOX BUSINESS; (B) APPROVING THE STALKING HORSE PROTECTIONS; (C) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (D) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS RELATED TO THEIR SET TOP BOX BUSINESS PURSUANT TO SUCCESSFUL BIDDER'S ASSET PURCHASE AGREEMENT FREE AND CLEAR OF LIENS, CLAIMS ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (C) GRANTING RELATED RELIEF**

NXP Semiconductors Netherlands B.V. ("NXP"), by and through its undersigned counsel, submits this Reservation of Rights (the "Reservation of Rights") with respect to *the Motion of the Debtors and Debtors in Possession Pursuant to Sections 105(a), 363 And 365 of the Bankruptcy Code for an Order (i)(a) Approving Procedures in Connection with the Sale of Certain of the Debtors' Assets Related to Their Set Top Box Business; (b) Approving the Stalking*

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Trident Microsystems, Inc. (6584) and Trident Microsystems (Far East) Ltd. The mailing address of each of the Debtors, solely for purposes of notices and communications, is 1170 Kifer Road, Sunnyvale, California 94086.

*Horse Protections; (c) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (d) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (e) Approving the Form and Manner of Notice Thereof; and (g) Granting Related Relief; and (ii)(a) Authorizing the Sale of Certain of the Debtors' Assets Related to Their Set Top Box Business Pursuant to Successful Bidder's Asset Purchase Agreement Free and Clear of Liens, Claims Encumbrances, and Other Interests; (b) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (c) Granting Related Relief* (the "Sale Motion")[2]. NXP respectfully represents as follows:

## BACKGROUND

### A. The Parties

1. On January 4, 2012 (the "Petition Date"), Trident Microsystems, Inc. ("TMI") and Trident Microsystems (Far East) Ltd. ("TMFE" and together with TMI, the "Debtors"), each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended or modified, the "Bankruptcy Code").

2. TMI, a Delaware corporation, is the direct parent company of TMFE, an exempted company incorporated in the Cayman Islands with limited liability. Sale Motion, ¶3. TMFE is the direct or indirect parent of subsidiary entities organized under the laws of various foreign countries (the "Foreign Subsidiaries" and together with TMI and TMFE, "Trident"). *Id.*

3. Trident designs, develops and markets integrated circuits and related software for processing, displaying and transmitting high quality audio, graphics and images in home consumer electronics applications such as digital TVs, PC-TV, and analog TVs, and set top boxes. *Id.* at ¶4. Trident's product line includes system-on-a-chip semiconductors that provide

---

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Sale Motion.

completely integrated solutions for processing and optimizing video, audio, and broadcast and satellite signals to produce high-quality and realistic images and sound. *Id.* Trident's products also include frame rate converter, demodulator, audio decoder products, interface devices, and media processors. *Id.*

4.  TMI serves as the corporate head of Trident and provides the corporate oversight and administrative services necessary for Trident's operations. *Id.* at ¶5. TMFE serves as the manufacturing procurement hub and primary accounts payable center for Trident. *Id.* TMFE holds most of Trident's intellectual property assets and contracts with all suppliers for use of the intellectual property and the production of finished goods. *Id.* Pursuant to a distribution and supply agreement between TMFE and non-debtor Trident Microsystems (Hong Kong) Limited ("TMHK"), TMFE sells finished goods to TMHK for re-sale to Trident's customers. *Id.* TMFE also serves as Trident's primary accounts payable processor and processes payments due to suppliers as well as payments to the non-revenue generating Foreign Subsidiaries that provide research and development, sales and marketing services for Trident. *Id.*

5.  NXP is a privately-held, limited liability company organized under the laws of The Netherlands and is a subsidiary of NXP B.V., a Dutch private company with limited liability that is wholly owned by NXP Semiconductors N.V., a Dutch public company with limited liability. With operations in more than twenty-five (25) countries, NXP designs and manufactures High-Performance Mixed-Signal and Standard Products semiconductor solutions for a broad array of applications. These innovations include the design and production of semiconductor devices ("Wafers").

**B.     The Manufacturing Services Agreement**

6.     Prior to the Petition Date, TMFE and NXP entered into that certain manufacturing services agreement dated February 8, 2010 (the "MSA").[3] Generally, the MSA provides for the manufacturing and sale of Wafers and the provision of services related thereto by NXP as ordered by the Debtors and their Affiliates[4] (together, the "Trident Group") for all of their business lines. In addition, the MSA contains certain minimum purchasing requirements that decline over the life of the contract. The Wafers are manufactured for and used by the Trident Group in all of their various business lines, including, but not limited to, their set top box business (the "STB Business").

7.     The services to be provided by NXP under the terms of the MSA include, among other things: (i) the manufacturing of Wafers up to the process control module electrical test and any other services performed before a Wafer leaves the manufacturing facility (the "Front End Services"); (ii) any operation performed on a Wafer after it has left the wafer manufacturing site, including, but not limited to, wafer testing, grinding, sawing, assembly, final test, marking and packing (the "Back End Services"); and (iii) certain customer services, order fulfillment, test and product engineering and business reporting (referred to in the MSA as the "Purchasing and Supply Chain Services"). MSA, §§ 2.1 and 2.2.

8.     Under the terms of the MSA, the Trident Group is required to provide NXP with regular projections of its product and manufacturing needs. MSA, § 4.1. The Trident Group is obligated to purchase a certain minimum volume commitment based on a percentage of total needs for such products and services sourced by the entire business from NXP's manufacturing plants (the "Total Relevant Demand Percentage"). MSA, § 5.1. Specifically, the MSA requires

---

[3] The MSA is subject to confidentiality restrictions and, accordingly, is not attached hereto. NXP will provide the MSA to the Court for *in camera* review upon request.
[4] The term "Affiliates" is undefined in the MSA.

that between January 1, 2012 through June 30, 2012, the Trident Group must source a volume of NXP's products and manufacturing services at fifty percent (50%) of the Total Relevant Demand Percentage based on 2009 total needs per "Service Type," which is defined as "(i) Front End Services relating to non-advanced CMOS Wafers (larger than .12 microns); (ii) Back End Services relating to assembly services; and (iii) Back End Services relating to testing services (Wafer testing and final testing taken together)." *Id.*

9.  As of the date hereof, the Debtors and its non-debtor subsidiaries are in material breach of the MSA based on their failure to make payments due and owing to NXP in the approximate amount of $22 million. Notwithstanding this breach, NXP, the Debtors and the Foreign Subsidiaries are working cooperatively to resolve supply and payment issues under the MSA.

C.  **The Sale Motion and Related Asset Purchase Agreement**

10.  On January 4, 2012, the Debtors filed the Sale Motion seeking, *inter alia*, to sell substantially all of their assets related only to the STB Business to Entropic Communications, Inc. (the "Stalking Horse Bidder"), pursuant to that certain Asset Purchase Agreement by and between Entropic Communications, Inc., as Purchaser, and Trident Microsystems, Inc. and specified Trident Microsystems Subsidiaries, as Sellers (the "Stalking Horse APA"). Along with the Debtors, the Stalking Horse APA lists nine (9), non-debtor, foreign subsidiaries of the Debtors (the "Non-Debtor Subsidiaries") as parties to the Stalking Horse APA.

11.  In addition to selling substantially all of the STB Business' assets, the Stalking Horse APA requires the Stalking Horse Bidder to have entered into a new MSA with NXP, so that NXP will continue to provide goods and services to the Stalking Horse Bidder that are essential to the operation of the STB Business. An amended MSA with NXP necessarily must

also be reached with regard to the supply of the Debtors' remaining business lines to enable the Debtors to service and continue to operate their other, non-STB Businesses. To that end, Section 2.3(I) of the Stalking Horse APA provides:

> **NXP Agreements.** The Purchaser or applicable Subsidiary shall have entered into with NXP a Manufacturing Services Agreement consistent with the NXP Manufacturing Services Agreement Term Sheet and the Transition Services Agreement with NXP covering related supply chain, product engineering and product support services, and such agreements shall remain in full force and effect.

12. As of the date hereof, NXP, the Debtors and the Stalking Horse Bidder have yet to reach an agreement with respect to either a new MSA or a Modified MSA to enable the Stalking Horse Bidder to operate the Debtors' STB Business as a going concern and the Debtors to continue to operate their remaining business lines post-closing of the sale contemplated by the Sale Motion and the Stalking Horse APA.

## RESERVATION OF RIGHTS

13. While NXP remains willing to work cooperatively with the Debtors and the Foreign Subsidiaries with respect to supply and payment issues in connection with the MSA, NXP notes that no new MSA has been negotiated or agreed to with the Stalking Horse or any other proposed purchaser, no modified MSA has been negotiated or agreed to with the Debtors and NXP may choose to negotiate and/or agree to any such new or amended MSA in its sole and absolute discretion. Consequently, NXP reserves any and all of its rights, claims, remedies, and defenses with respect to the Sale Motion and any proposed sale of the Debtors' STB Business, including, without limitation, any and all rights, claims, remedies, and defenses with respect to (a) any proposed disposition, assumption and/or assignment of the MSA or any contract with NXP; (b) all jurisdictional and/or related issues in connection with the Sale Motion and any sale proposed thereunder; and (c) any proposed new or modified MSA, which NXP may or may not

choose to negotiate and agree to in its sole and absolute discretion. NXP further reserves all of its rights, claims, remedies, and defenses with respect to the Foreign Subsidiaries.

WHEREFORE, NXP reserves all rights, remedies, claims, and defenses in connection with the Sale Motion, the Debtors and the Foreign Subsidiaries in connection with the MSA, the Sale Motion, these jointly administered bankruptcy cases, and otherwise available to NXP at law or in equity.

Dated: January 17, 2012
Wilmington, Delaware

LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:    (302) 467-4400
Facsimile:     (302) 467-4450

-and-

Michael H. Steinberg
Hydee R. Feldstein
**SULLIVAN & CROMWELL**
1888 Century Park East
Los Angeles, California 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

*Counsel for NXP Semiconductors Netherlands B.V.*