IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
:
In re                                                            : Chapter 11
:
Trident Microsystems (Far East) Ltd, *et al.*,[1]                : Case No. 12-10070 (CSS)
:
Debtors.                                                         : (Jointly Administered)
:
---------------------------------------------------------------- x


## AFFIDAVIT OF COLIN DOUGLAS MCKIE


I Colin Douglas McKie, of Maples and Calder, Ugland House, South Church Street, Grand Cayman, KY1-1104, Cayman Islands **MAKE OATH AND SAY** as follows:

Introduction

1	The facts and matters set out in this affidavit that are within my own personal knowledge are true and correct.  Where the contents of this affidavit are not within my own personal knowledge, I have stated the source of my knowledge and such facts are true and correct to the best of my information and belief.

2	I am a partner of the law firm of Maples and Calder, P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman, KY1-1104, Cayman Islands.  I am admitted as an attorney at law in the Cayman Islands[2].  I practise law in the Cayman Islands and I advise on the laws of the Cayman Islands.

---

[1] The Debtors are Trident Microsystems Inc. and Trident Microsystems (Far East) Limited ("**Debtors**")

[2] I am also admitted as a solicitor and solicitor-advocate in England and Wales; as a solicitor and solicitor-advocate in the British Virgin Islands; and as a solicitor in St Kitts and Nevis, Anguilla and St Vincent, although I no longer practise the laws of these jurisdictions.

3    I am a member of the Rules Committee for the Grand Court of the Cayman Islands (the "**Grand Court**") which is a statutory body authorised by the Grand Court Law to make rules for the Grand Court governing its practice and procedure generally, and of the Insolvency Rules Committee which is a statutory body authorised by the Companies Law to make rules for the Grand Court governing the practice and procedure relating to the winding up of companies.

4    I have been asked by the Debtors to explain in general terms the relevant substantive Cayman Islands law and procedural rules relating to the liquidation and dissolution of insolvent Cayman Islands companies, and in particular how they relate to Trident Microsystems (Far East) Limited (the "**Company**"). The issues on which I am asked to opine fall well within my professional experience.

5    On 4 January 2012 the Company presented (i.e. filed) a petition to the Grand Court seeking the appointment of Gordon MacRae and Eleanor Fisher as liquidators and on the same day applied to the Grand Court for their appointment as provisional liquidators of the Company. On 11 January 2012 the Grand Court appointed Gordon MacRae and Eleanor Fisher as joint provisional liquidators, and directed that the hearing of the winding up petition be heard on 16 February 2012. True copies of the petition and order are exhibited hereto as Exhibit 1. Maples and Calder acts as Cayman Islands counsel to the Debtors in respect of the winding up petition and acts as Cayman Islands counsel to the joint provisional liquidators in the provisional liquidation.

## Sources of Cayman Islands Law

6    The Cayman Islands are an Overseas Territory of the United Kingdom.

7    The law of the Cayman Islands comprises:

    7.1    Statutes passed by the local legislature[3], which is now the Legislative Assembly as constituted by the Cayman Islands Constitution. Bills passed by the legislature and

---

[3] Article 81 of the Constitution reserves to the Governor of the Cayman Islands powers to enact legislation, with the prior approval of one of the United Kingdom's Secretaries of State, in exceptional circumstances. Article 125 of the Constitution also reserves to Her Majesty full power to make laws for the peace, order and good government of the Cayman Islands. In practice, that power is exercised by Her Majesty on the recommendation of Her Majesty's Privy Council.

       approved by the Governor of the Cayman Islands become law[4] unless one of the United Kingdom's Secretaries of State disallows them[5]. This includes statutes such as the Companies Law and the Grand Court Law.

7.2    Subordinate legislation enacted pursuant to local statutes. This includes the Company Winding Up Rules, the Insolvency Practitioners Regulations, and the Grand Court Rules.

7.3    Statutes passed by the parliament of the United Kingdom that have been expressly extended to the Cayman Islands.

7.4    Orders of Her Majesty's Privy Council that are applicable to the Cayman Islands.

7.5    Relevant received laws of England at the time of the settlement of the Cayman Islands. The Cayman Islands is a settled colony (i.e. as opposed to a conquered colony or a ceded colony). The original English settlers who came to the Cayman Islands are deemed to have brought with them such portions of English common law, rules of equity and statute law as may have been applicable to their new situation and the condition of the colony at the time of its settlement. The result of this is that the English common law and rules of equity existing at that time form part of the law of the Cayman Islands[6].

## Local Legislation

8    The United Kingdom parliament usually only extends statutes to colonies (now Overseas Territories) such as the Cayman Islands in areas for which the United Kingdom retains responsibility, such as foreign affairs, or when the United Kingdom regarded the statute in question as being of sufficient importance and general application that it ought to be applied to all colonies, or where the colony in question specifically requested that it do so. In practice, few such statutes have been extended to the Cayman Islands.

---

[4] To the extent that any local statute (or any subordinate legislation made under such statute) is or shall be repugnant to any provision of any statute passed by the UK parliament that has been extended to the Cayman Islands, or to any order of the Privy Council applicable to the Cayman Islands, the UK statute or Privy Council order prevails – see s. 2 of the Colonial Laws Validity Act 1865 and *Attorney General of the Cayman Islands v Euro Bank Corp.* [2002] CILR 334.

[5] Article 80 of the Constitution

[6] Except to the extent that they were inapplicable to the situation of the colonists and the condition of the colony at the time of its settlement or they have been amended or abrogated by local legislation or by United Kingdom statutes that have been expressly extended to the Cayman Islands or by Privy Council orders that are applicable to the Cayman Islands.

9    However, the local legislature has frequently enacted local legislation that reproduces English legislation to a greater or lesser extent. The same is true of many other colonies and members, and former members, of the Commonwealth. Consequently, when the courts of the Cayman Islands are considering provisions of local legislation that are the same, or substantially the same, as provisions of English (or Commonwealth) statutes they frequently refer to and rely upon relevant decisions of the English (or Commonwealth) superior courts of record interpreting those provisions of the English (or Commonwealth) statutes.

Cayman Islands judicial system

10    The Cayman Islands Constitution constitutes the Grand Court of the Cayman Islands and the Court of Appeal of the Cayman Islands. The Grand Court is established by the Grand Court Law and the Court of Appeal is established by the Court of Appeal Law. The Grand Court and the Court of Appeal are superior courts of record.

11    Subject to certain laws, the Grand Court possesses and exercises a jurisdiction within the Cayman Islands similar to that which is vested in, or is capable of being exercised in England, by the English High Court and the Divisional Courts of that Court. Subject to certain restrictions, an appeal will lie to the Court of Appeal without requiring the leave of the Grand Court or of the Court of Appeal from any final, civil judgment, decree, order or declaration of the Grand Court. Subject to certain exceptions, an appeal will lie to the Court of Appeal only with the leave of the Grand Court or of the Court of Appeal from any interlocutory, civil judgment, decree, order or declaration of the Grand Court.

12    A further appeal may lie to the Privy Council in respect of a judgment, decree, order or declaration of the Court of Appeal. Because the European Convention on Human Rights applies to the Cayman Islands, a further appeal may lie to the European Court of Human Rights if it raises appealable human rights issues under the Convention[7].

Stare decisis

13    The legal system of the Cayman Islands is an English-style common-law system based upon the doctrine of precedent.

---

[7]    See, for instance, *Ebanks v United Kingdom* [2010] 1 CILR 200 (ECHR), on appeal from *Ebanks v R* [2006] CILR 198 (PC).

14      The *rationes decidendi* of decisions of the Privy Council in appeals from the Cayman Islands are binding on the Cayman Islands Courts in subsequent cases. Where the law is the same, the Grand Court also considers itself bound by the Privy Council decisions from other countries. The *rationes decidendi* of decisions of the Court of Appeal are binding on itself and on the Grand Court in subsequent cases. The *rationes decidendi* of decisions of the Grand Court are normally followed by itself in subsequent cases.

15      In the absence of specific Cayman Islands binding authority, the Cayman Islands Courts will regard as highly persuasive relevant decisions of the superior courts of record of England and Wales, although such decisions are not, strictly speaking, binding on the Cayman Islands Courts. Similarly, relevant decisions of the senior courts of record of the other jurisdictions of the United Kingdom and of members (and former members) of the Commonwealth are likely to have persuasive value in the Cayman Islands Courts where the legal principle under consideration is the same or substantially the same.

16      All things being equal, the more senior the English, United Kingdom, or Commonwealth court concerned, the more persuasive value it will carry in the Cayman Islands Courts.

Companies Law

17      From 1864 to 1962, the relevant companies statute for the Cayman Islands was the Jamaica Companies Law 1864, as amended from time to time. In 1961 the local legislature of the Cayman Islands enacted the Companies Law (Law 3 of 1961) Cap. 22; it came into force on 1 January 1962 and at that time the Jamaican Companies Law ceased to apply. Since then that statute has been variously amended, revised and consolidated. All further references in this report to the Companies Law means the Companies Law 1961 as amended and revised[8], unless otherwise stated.

18      The draftsman of the Companies Law 1961 intended to create an entirely new piece of legislation for the purposes of attracting financial services business to the Cayman Islands, and to generate revenue for the Cayman Islands Government. In so doing, he drew heavily upon two particular sources, namely the English Companies Act 1948 (being the then-current statute in England whose origins lay in the English Companies Act 1862) and the Jamaican

---

[8]  Currently the Companies Law (2011 Revision).

Companies Law 1864 (as amended) (being the then-current statute in Jamaica and which was itself based on the 1862 Act).

19   Certain provisions of the Companies Law 1961 reproduce provisions of the 1948 Act verbatim, or very nearly so. Relevant decisions of the English courts relating to the true meaning and effect of those provisions of the 1948 Act[9] are accordingly persuasive with respect to the equivalent provisions of the Companies Law.

20   Other parts of the Companies Law 1961 reproduce provisions of the 1862 Act (i.e. via the Jamaican Companies Law) verbatim, or very nearly so, and which differ from the provisions of the 1948 Act (or its successors). Relevant decisions of the English courts relating to the true meaning and effect of those provisions of the 1862 Act[10] are accordingly persuasive with respect to the equivalent provisions of the Companies Law.

21   Finally, there are provisions of the Companies Law which have been introduced since 1961 that are unique to the Cayman Islands statute and reflect the development of the Cayman Islands as a leading financial services centre.

Legislation for the winding up of Cayman Islands companies

22   The substantive law relating to the winding up of companies incorporated in the Cayman Islands is contained in Part V of the Companies Law[11]. The provisions of Part V apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies, and foreign companies in respect of which the Grand Court ("**Grand Court**") has made a winding up order. A true and correct copy of Part V of the Companies Law and the Rules are attached hereto as Exhibit 2.

23   The Companies Law provides for three different modes for winding up Cayman Islands companies although there is considerable overlap of provisions relating to each system and relating to the powers and duties of the liquidators. They are: (1) winding up by order of the Grand Court, (2) voluntary winding-up initiated by a resolution of the shareholders, and (3)

---

[9] And, where those sections have been reproduced in subsequent English statutes, the decisions of the English courts in respect those sections. The current English statute is the Companies Act 2006.

[10] Or, where relevant, its successors.

[11] There are additional statutes relating to those Cayman Islands companies that are regulated by the Cayman Islands Monetary Authority, such as banks and insurance companies. However, Trident Microsystems (Far East) Ltd was not regulated by CIMA.

voluntary winding-up subject to the supervision of the Grand Court. In this case the Company sought to be wound up by order of the Grand Court and the provisions relating to the other two modes are not relevant.

24  The substantive law contained in Part V of the Companies Law is supplemented by detailed rules governing the practice and procedure for insolvencies of companies that are set out in the Companies Winding Up Rules (2008) (as amended) (the "**CWR**"), the Insolvency Practitioners Regulation's (2008) (as amended) (the "**Regulations**") and the Foreign Bankruptcy Proceedings (International Co-operation) Rules 2008 together with a detailed body of case law. True copies of the relevant sections of the CWR and the Regulations referred to below are attached hereto as Exhibit 3. True copies of the case law that I refer to herein are attached hereto as Exhibit 4.

Winding-Up Proceedings and Appointment of Provisional Liquidators

25  Pursuant to section 92 of the Companies Law, a company may be wound up by the Grand Court if, among other things, the company is unable to pay its debts. The test that is applied to determine whether a company is unable to pay its debts, is based on a cash flow test of solvency.

26  Pursuant to section 94 of the Companies Law a creditor (including any contingent or prospective creditor), contributory (which for all practical purposes means a shareholder), the company itself[12] may petition the Grand Court for the compulsory winding-up of a company on the grounds set out in section 92.

27  At or shortly after the presentation of a winding up petition the Grand Court will fix a date for it to be heard. In the cases of a winding up petition presented on the basis that the company is insolvent the date is usually fixed for about four to eight weeks after the petition was filed.

28  At any time after the presentation of the winding up petition, pursuant to Section 104(1) and (2) of the Companies Law the Grand Court has jurisdiction to appoint provisional liquidators on the application of a creditor or contributory[13] on the grounds that:

---

[12]  Or Cayman Islands Monetary Authority ("**CIMA**") if the company is carrying on regulated business.
[13]  Ditto.

(a) There is a *prima-facie* case for making a winding up order; and

(b) The appointment of the provisional liquidators is necessary in order to:

   (i) prevent the dissipation or misuse of the company's assets;

   (ii) prevent the oppression of minority shareholders; or

   (iii) prevent mismanagement or misconduct on the part of the company's directors.

29  In addition, section 104(3) of the Companies Law provides that the company itself can apply for the appointment of provisional liquidators on the basis that:

(a) the company is or is likely to become unable to pay its debts; and

(b) the company intends to present a compromise or arrangement to its creditors.

30  The Grand Court will appoint provisional liquidators to facilitate such a restructuring provided it is satisfied that the appointment of the provisional liquidators is for the benefit of those having the financial interests in the company. The Grand Court must be satisfied that the order would be for the general benefit of creditors, and subject to the creditors' prior interests, the interests of shareholders.

31  If the Grand Court appoints a provisional liquidator then pursuant to section 97(1) of the Companies Law further proceedings in any action, suit or proceedings against the company are automatically restrained pending the hearing of the petition, i.e. during the currency of the provisional liquidation. The purpose of that section is to ensure that creditors are treated equally and prevent a disorderly scramble for assets. It does not prevent a creditor from seeking an immediate winding up order on the company's own winding up petition. Nor does it prevent any creditor from presenting a winding up petition of its own. However, this section has no application to secured creditors who are entitled to take steps to enforce their security not withstanding the provisional liquidation – see further at paragraph 61 below.

32  If the Grand Court has already appointed a provisional liquidator then at the hearing of the winding up petition the Grand Court may make one of the following orders:

(a) adjourn the adjudication of the petition for an indefinite period to enable the provisional liquidation to continue in order to facilitate the restructuring. The company and any creditor or shareholder will then be at liberty to apply to the Grand Court at a future date to set a new hearing date for the adjudication of the petition;

(b) adjourn the adjudication of the petition to a specified date from time to time, on which hearing dates the Grand Court will review the conduct of the provisional liquidation and determine whether it should continue, the company should be wound up or the proceeding dismissed and the provisional liquidator discharged. Creditors and/or shareholders (depending on whether the company is solvent, insolvent or of doubtful solvency) are entitled to be heard on these return hearing dates and put forward their views to the Grand Court.

(c) dismiss the petition (either because the company has been able to resolve its financial difficulties whilst in provisional liquidation, or for any other reason). If the Grand Court dismisses the petition then the appointment of the provisional liquidator will be discharged and the directors of the company will resume the management of the company's affairs; or

(d) make a winding-up order and appoint official liquidators to wind up the company.

33   Before a winding up petition presented on the grounds of insolvency may be heard, the Grand Court must be satisfied that the date for the hearing of the petition has been properly advertised. Where the petitioning company does business outside the Cayman Islands, the Court will typically direct that the hearing date of the petition must be advertised at least seven business days before the hearing date in a newspaper having circulation in a country where it is most likely to come to the attention of the company's creditors. (See CWR O.3, r. 6.)

34   The creditors of the company are entitled to appear and be heard on the return date for the hearing of the petition to put forward their views to the Grand Court.

35  Pursuant to section 100(2) of the Companies Law, in the event a winding up order is made, the winding-up of the company is deemed to have commenced at the time of the presentation of the petition.

36  By presenting a petition; seeking the appointment of a provisional liquidator and thereby obtaining an automatic stay preventing creditors from pursuing claims against the company; and then on 16 February 2012 requesting the Grand Court to adjourn the hearing of the petition indefinitely, the Company is seeking to achieve a result which is similar to that which could be achieved under Chapter 11. The Grand Court accepted that this was a legitimate use of the then statutory provisions in Re Fruit of the Loom[14]. However, subsequently, the Hong Kong Court of Appeal, whose decisions are of persuasive authority in the Cayman Islands, held that, under a similar statutory regime, the appointment of provisional liquidators purely for the purpose of a restructuring was not an appropriate use of the winding up procedures[15]. This cast some doubt on the matter which was resolved by the amendment of the Companies Law in 2009[16] to include section 104(3) expressly permitting provisional liquidators to be appointed for this purpose.

37  As there is no Cayman Islands equivalent to the US Chapter 11 process, a provisional liquidation is commonly used to implement the restructuring of an insolvent company in the Cayman Islands[17] and in support of US Bankruptcy proceedings[18]. However, on 16 February 2012, in the event that a majority (by value) of the Company's unsecured creditors favour an immediate liquidation rather than a continuation of the provisional liquidation, the creditors can expect a winding up order to be made.

Powers and Duties of Provisional Liquidators

38  A provisional liquidator has no automatic statutory powers. Instead, the powers of the provisional liquidators are conferred on him by the Grand Court and his powers may be limited by the order appointing him (see Section 104(4) of the Companies Law). The Grand Court order shall also specify which powers, if any, remain with the directors of the company

---

[14] [2000] CILR N-7.
[15] Re Legend International Resorts Limited 2006 HKCA 74
[16] Pursuant to the Companies (Amendment) Law, 2007 which came into force on 1 March 2009
[17] Re China Milk Products Group Limited Grand Court, unrep. 22 July 2011
[18] See for example, Fruit of the Loom

(see CWR O.4, r.4(3)). The Grand Court may from time to time vary the provisional liquidator's powers in such circumstances as it thinks fit.

39   In this regard, the order appointing Mr MacRae and Mrs Fisher as the Company's provisional liquidators (the "**JPLs**") attached hereto at Exhibit 1, sets out the division of powers between the JPLs and the directors of the Company. The purpose of the division of powers in these circumstances is to recognise that the Company is operating its business as a debtor in possession pursuant to the Chapter 11 proceedings in Delaware. Accordingly the directors of the Company retain the power to conduct the ordinary business operations of the Company and operate the Company's bank accounts (see paragraphs 4(a),(c) and (d) of the Order). The JPLs however retain supervision over the directors and the directors must make weekly reports to the JPLs in respect of the conduct of the business (see paragraph 4 of the Order). The consent of the JPLs is also a pre-requisite to certain proposed actions such as the sale of the Company's assets or business and payment of pre-petition debts (see paragraphs 2(e) and (f) of the Order).

40   At the hearing to appoint a provisional liquidator, the Grand Court may also make orders and directions in respect of the reporting obligations of the provisional liquidator, the appointment of a liquidation committee, the preparation of a compromise or arrangement with creditors pursuant to section 86 of the Companies Law and any other matters that the Grand Court thinks fit (see CWR O. 4, r.7(3)).

41   The principal function of a provisional liquidator is to preserve the status quo pending the hearing of the petition. To give effect to this he exercises his powers to take into his custody and control all the assets of the company with a view to protecting and preserving the assets for the ultimate benefit of those who will share in the proceeds of its realisation if a winding-up order is made. However, see further at paragraph 47 below in respect of a provisional liquidator appointed for the purpose of a restructuring.

42   However, it is not the function of the provisional liquidator to liquidate the company. In this regard, the provisional liquidator would not normally be granted the power to sell the assets of the company solely for the purpose of distributing the proceeds to creditors to discharge its pre-petition debts. Nor would the provisional liquidator normally have a role seeking to

establish whether or not claimants are in fact creditors of the company or discharging pre-petition liabilities of the company.

43  A provisional liquidator is an officer of the Grand Court and is an agent of the company. He owes fiduciary duties to the company to act for proper purposes, in good faith and in the interests of the company as a whole. The interests of the company as a whole are represented by the interests of the unsecured creditors of the company where the company is insolvent, the unsecured creditors and shareholders where the company is of doubtful solvency, or the shareholders where the company is solvent. He does not represent any creditor or class of creditors or any shareholder or class of shareholders; he is required to be independent of the management of the company and its creditors and is required to behave in an even-handed fashion between creditors or groups of creditors amongst themselves.

44  The Regulations set out various pre-conditions that must be fulfilled before a person is considered to be qualified for appointment by the Grand Court as an official liquidator including:

44.1  He must be a qualified insolvency practitioner, professional accountant or have previously been appointed by the Grand Court as a Cayman Islands liquidator (Regulation 4);

44.2  He must be resident in the Cayman Islands and the firm of which he is a partner or employee must hold a trade and business licence which authorises him or his firm to carry on business as professional insolvency practitioners (see Regulation 5);

44.3  He must be independent, in that he or his firm must not have acted as an auditor to the company within the three years preceding the liquidation (see Regulation 6);

44.4  He or is firm must have sufficient professional indemnity insurance to the levels set out in Regulation 7[19].

45  Although the Regulations do not expressly apply to provisional liquidators, in practice, the Grand Court requires provisional liquidators to fulfil these requirements.

---

[19] failing which the Court has power to order that the appointee gives security for the due performance of his duties.

46    Mr MacRae and Mrs Fisher each sworn an affidavit on 5 January 2012 confirming that they satisfied these conditions. True copies of these affidavits are attached hereto as Exhibit 5.

Scheme of Arrangement

47    In the context of a provisional liquidator appointed pursuant to section 104(3) of the Companies Law, a key function is also to explore restructuring options for the company with a view to maximising the return to creditors and returning the company to solvency.

48    In this regard, the provisional liquidator may seek to implement a scheme of arrangement pursuant to section 86 of the Companies Law between the company and its creditors and/or shareholders (depending on whether the company is solvent, insolvent or of doubtful solvency).

49    A scheme of arrangement is a court-supervised compromise between a company and its creditors and/or shareholders (or classes thereof). A scheme of arrangement may be used to effect, among other things, a compromise of liabilities to creditors.

50    The scheme process involves a meeting of each of the relevant class(es) of members or creditors whose rights are to be subject to the scheme. Those meetings are convened by the Grand Court at an initial interlocutory hearing (the "**Interlocutory Hearing**"). At the Interlocutory Hearing the company must demonstrate:

    (a)    The proposed scheme is properly a scheme under the relevant legislation, such that the Grand Court would have jurisdiction to sanction it;

    (b)    The proposed classes for the purpose of the court meeting(s) are properly constituted;

    (c)    That the proposed time and place of the court meeting is appropriate (see further below);

    (d)    The information circular to be provided to the scheme participants contains "all information reasonably necessary to enable them to make an informed decision about the merits of the proposed scheme"[20].

---

[20] *Re XL Capital Ltd.* [2010] (1) CILR 52

51  The majorities which must be achieved at the meeting of each class of creditors and/or shareholders attending and voting at the meeting (in person or by proxy) are:

    (a)  50% + 1 in number; and

    (b)  75% in value.

52  If the scheme is approved at the court meeting, an application will be made to the Grand Court to sanction the scheme ("**Sanction Hearing**"). At the Sanction Hearing, in addition to the matters established at the Interlocutory Hearing[21] the company will be required to demonstrate to that[22]:

    (a)  The terms of the order made at the Interlocutory Hearing have been complied with;

    (b)  The court meeting was properly held and the necessary majorities were achieved at the court meeting;

    (c)  The scheme participants were fairly and adequately represented by those who attended the court meeting;

    (d)  The scheme is a fair one, in the sense that an intelligent and honest man, being a member of the class concerned and acting in respect of his interest, might reasonably approve of it; and

    (e)  That, as a matter of its discretion, the Grand Court should sanction the scheme.

53  The Sanction Hearing is held in open court. Any person who voted at the relevant court meeting, and any person who gave voting instructions to a custodian or clearing house who voted at the relevant court meeting is entitled to be heard at the Sanction Hearing. The Grand Court also has a wide residual discretion to hear from any other persons with a substantial economic interest in the scheme.

54  A scheme is a collective procedure. The principal benefit of a scheme is that if all the necessary majorities are obtained at each of the court meetings, and the court approves the scheme, then the terms of the scheme become binding on all members of the relevant class(es) of creditors or

---

[21]  In theory, at the Sanction Hearing the Grand Court is not bound by the its own findings at the Interlocutory Hearing as to matters such as, for example, the adequacy of disclosure, the composition of scheme classes, or the appropriateness of notice periods.
[22]  *Re British Aviation Insurance Co* [2006] 1 BCLC 665 at 683 to 700

shareholders, whether or not they (a) received notice of the scheme, (b) voted at the meeting, (c) voted for or against the scheme, and (d) changed their minds afterwards.

Liquidation Committee

55   Upon his appointment, a provisional liquidator, if so ordered by the Grand Court, must seek to convene a liquidation committee (the "**Liquidation Committee**") (see CWR O.9, r. 1(2)). Normally a Liquidation Committee will have a consultative role whereby the provisional liquidator must report to the Liquidation Committee on all such matters as appear to be of concern with respect to the provisional liquidation (CWR O.9, r.3(1)). However if the Grand Court considers it appropriate to do so, it may to direct that the provisional liquidator may not act without the consent of the Liquidation Committee.

56   If a winding up petition is presented on the grounds of the company's insolvency and the Grand Court appoints a provisional liquidator then it necessarily follows that the Grand Court was satisfied that, prima facie, the company is insolvent and therefore the provisional liquidator will convene a meeting of creditors only (CWR O.8, r.1(4)).

57   Within 28 days of the Order appointing the provisional liquidator (CWR O.8, r.2(1)), the provisional liquidator must convene a first meeting of creditors seeking to constitute the Liquidation Committee. He must give 21 days notice of the meeting (CWR O.8, r.4(4)). At that meeting, the attendees will be asked to elect the Liquidation Committee which must comprise of not less than three or no more than five creditors (CWR O.9, r.1(3)).

58   Once the Liquidation Committee has been elected, the provisional liquidator must file a certificate to this effect with the Grand Court and from that time the Liquidation Committee is constituted to act (CWR O.9, r 1(9) and (10)).

59   The first meeting of the Liquidation Committee must be convened within three months of its establishment and thereafter at such intervals as may be resolved by the Liquidation Committee or requested in writing but in any event not less than every six months (CWR O.9, r. 3(4)).

60   If the provisional liquidator is satisfied that it will be practically impossible to establish a liquidation committee in accordance with these rules, he must apply to the Grand Court for a

direction dispensing with the requirement for a Liquidation Committee or a direction permitting the establishment of the Liquidation Committee with fewer members or a different combination of creditors or contributories (CWR O. 9, r. 1(7)).

<u>Position of Creditors</u>

61   Pursuant to section 142(1) of the Companies Law, a creditor having a validly created security interest over property of an insolvent company in liquidation is entitled to enforce his security without reference to the liquidators and without the leave of the Grand Court.

62   When a company is placed into official liquidation and the official liquidators are making a distribution of company property, it is a fundamental rule of Cayman Islands insolvency law that all ordinary unsecured creditors are treated equally, irrespective of the nature of their claims. This is referred to as the *pari passu* rule.  Accordingly, as set out at section 140(1) of the Companies Law, after payment of the costs and expenses of the liquidation, the property of the company is applied in satisfaction of its unsecured pre-petition liabilities on a *pari passu* basis. Local creditors do not have any preference or priority over US or other foreign creditors. This rule applies among ordinary unsecured creditors existing as at the date of the presentation of the winding-up petition, or whose claims arise out of causes of action which accrued before the date of the presentation of the winding-up petition.  These will include creditors whose claims against the company arise out of contracts (e.g. trade creditors, employees), common law and statutory torts, equitable claims, etc.

63   Section 141 and Schedule 2 of the Companies Law provides for certain preferred debts to be paid in priority to all other unsecured debts.  Preferred debts include certain amounts due to employees and taxes due to the Cayman Islands government under the Customs Law, Companies Law, Stamp Duty Law (2010 Revision), Tourist Accommodation (Taxation) Law (2003 Revision) together with licence fees payable under certain regulatory laws.  If the company in liquidation is a bank, amounts due to certain deposit holders are also preferred.

64   By virtue of section 140(2) of the Companies Law subordination agreements and contractual rights of set-off or netting of claims are enforceable by and against the liquidators of an insolvent company.

Proving claims in a Liquidation

65    In general it is not the role of a provisional liquidator to deal with the adjudication of creditor claims and the distribution of dividends to creditors. This is the function of the official liquidator once the official liquidation commences. However, if it was necessary and appropriate for a provisional liquidator to adjudicate claims in the context of a provisional liquidation, the Grand Court could grant the provisional liquidator the power to do so. The provisional liquidator would then proceed as an official liquidator would, as follows.

66    CWR Order 16 contains detailed procedures for dealing with creditor claims in a liquidation. In a solvent liquidation, there is no need for creditors to file claims (CWR O.16, r.1). However, where a company is insolvent or of doubtful solvency, a person claiming to be a creditor of the company must submit his claim in writing to the official liquidator (referred to as "proving in the liquidation") (CWR O.16, r.2).

67    It is a fundamental duty of the official liquidators to identify the company's creditors and ensure that they have a reasonable opportunity to prove their claims. The official liquidators must then adjudicate upon creditor's claims to determine whether they should be admitted for payment. In doing so official liquidators are acting in a quasi-judicial capacity and must take legal advice where appropriate. In respect of contingent liabilities, the official liquidators may estimate the value of the debt for the purpose of admitting it for payment and must notify the contingent creditor of the estimate (CWR O.16, r. 16). The official liquidators may admit a claimant's claim in whole or in part, or reject it and must the immediately send notice to the claimants of the decision (CWR O.16, r.6). If a creditor is dissatisfied with the official liquidator's decision, he may appeal to the Grand Court for the decision to be reversed or varied (CWR O.16, r. 17).

Readjustment of prior transactions

68    There are various Cayman Islands statutory provisions whereby a transaction with an insolvent company that took place prior to the winding up may be unlawful and may be set aside. In summary they are as follows:

   (a)    If within six months before the commencement of the winding-up, at a time when it cannot pay its debts as they fall due, the company makes a payment to a creditor with a view to giving that creditor a preference, the payment will be voided and is liable to be set aside on the application of the official liquidator (see section

145 of the Companies Law). The essence of the fraudulent preference is that the company, knowing that it cannot pay all its debts in full, voluntarily and improperly makes a payment or gives a benefit to one creditor which will result in an inequality between him and its other creditors. There is no fraudulent preference if the payment is not given voluntarily. A payment can only be set aside as a fraudulent preference if the official liquidator can establish that it was made for an improper motive.

(b) Any disposition of a company's property at an undervalue with the intention of defeating the claims of creditors or claimants is voidable and capable of being set aside by the official liquidator under section 146 of the Companies Law and by any prejudiced creditor under section 4 of the Fraudulent Dispositions Law (1996 Revision). There is a six year limitation period in each case calculated from the date of the disposition.

(c) A disposition of the property of the company made during the period after a winding up petition is filed but before the winding up order is made is void unless approved by the Grand Court (section 99 of the Companies Law).

(d) Pursuant to section 147 of the Companies Law, upon application of the official liquidator, the Grand Court has the power to compel any persons who were knowingly party to the carrying on of the business of the company for a fraudulent purpose to make such contribution to the company's assets as the Grand Court deems appropriate.

Remuneration of the provisional liquidator and expenses of the Provisional Liquidation

69    The remuneration of the provisional liquidator and his agents for work reasonably and properly done and the expenses reasonably and properly incurred by them during the course of the provisional liquidation are paid out of the assets of the company in priority to all other debts save for the legal costs of the petitioner or those appearing on the petition whose costs are allowed by the Grand Court (CWR O.20, r.1(1)). The expenses incurred by the provisional liquidator are paid in priority to his own remuneration (CWR O.20, r.1(1)(d) and (e)) and in priority to the expenses and remuneration of any official liquidator subsequently appointed (CWR O.20, r.1(f) and (i)).

70   The amount and payment of the provisional liquidator's remuneration is determined in accordance with the Regulations (Regulation 10(1)).

71   In the first instance, the Liquidation Committee must agree the basis upon which the provisional liquidator is to be remunerated including the amount of his hourly rates (Regulation 14). In this regard, the hourly rates cannot exceed the maximum hourly rates prescribed by the Regulations (Regulation 15(1)).

72   In the event that the Liquidation Committee and the provisional liquidator cannot reach agreement on the terms of remuneration or in the event there is no Liquidation Committee, the provisional liquidator must apply to the Grand Court for approval of the proposed terms of his remuneration (Regulation 15(4)).

73   The provisional liquidator is not entitled to receive any remuneration without the prior approval of the Grand Court. Pending Court approval, the provisional liquidator may take payments on account, the amount of which shall not exceed 80% of their total remuneration. In the event the amount of remuneration approved by the Grand Court is less than the amount paid on account, the provisional liquidator must repay the balance to the company (Regulation 10).

74   Prior to seeking the Grand Court's approval for payment of their remuneration, the provisional liquidator must also seek the approval of the Liquidation Committee, or in the event that there is no Liquidation Committee, the approval of the creditors and/or contributories of the company (depending on whether the company is insolvent, solvent or of doubtful solvency) (Regulation 12).

SWORN to at Ugland House, Cayman Islands )
This 20th day of January 2012                )
before me                                    )   _____
                                                 Colin D. McKie

_____
Notary Public

Before me, Chandra A Ebanks, a Notary Public
in and for the Cayman Islands

this 20th day of January 2012
_____
(My commission expires on 31st January 2012)

