## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Trident Microsystems, Inc., *et al.*, | Case No. 12-10069 (CSS) |
| Debtors. | Jointly Administered |

### LIMITED OBJECTION OF KONINKLIJKE PHILIPS ELECTRONICS N.V. TO THE DEBTORS' SALE OF CERTAIN OF THEIR ASSETS RELATED TO THEIR SET TOP BOX BUSINESS

Koninklijke Philips Electronics N.V. ("Philips"), by and through its undersigned counsel, Morgan, Lewis & Bockius LLP, hereby files this limited objection to the *Motion of the Debtors and Debtors In Possession Pursuant to Sections 105(A), 363 and 365 of the Bankruptcy Code for an Order (I)(A) Approving Procedures in Connection with the Sale of Certain of the Debtors' Assets Related to Their Set Top Box Business; (B) Approving the Stalking Horse Protections; (C) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (D) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (E) Approving the Form and Manner of Notice Thereof; and (F) Granting Related Relief; and (II)(A) Authorizing the Sale of Certain of the Debtors' Assets Related to Their Set Top Box Business Pursuant to Successful Bidders Asset Purchase Agreement Free and Clear of Liens, Claims Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief* (the "Sale Motion"), and respectfully states as follows:

## PRELIMINARY STATEMENT

Philips does not objection generally to the Debtors' efforts to sell their assets. Rather, Philips simply objects to the Debtors' attempt to sell assets in which Philips has certain interests, without (i) assuming related contracts *in toto*, (ii) promptly paying cure costs and (iii) requiring the purchaser to assume the liabilities and obligations associated with such contracts and provide adequate assurance of future performance of such liabilities and obligations.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a cure proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On  January 4, 2012 (the "Petition Date"), the Debtors each filed a voluntary petition in the above-captioned Court seeking relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and, continually since the Petition Date, the Debtors have operated as debtors-in-possession with respect to their bankruptcy estates. Also on the Petition Date, Trident Microsystems (Far East) Ltd. ("Trident Far East"), one of the Debtors in these cases, filed a petition in the Grand Court of the Cayman Islands (the "Cayman Court") seeking appointment of Gordon McCrae and Eleanor Fisher (collectively, the "JPLs") as joint liquidators and applying to the Cayman Court for their appointment as provisional liquidators of Trident Far East. Since the Petition Date, the JPLs have exercised their authority with regard to Trident Far East as provided by the applicable laws of the Cayman Islands and subject to the control of the Cayman Court.

*The Divested Company Agreement*

4.      Philips is a Dutch multinational electronics company headquartered in Amsterdam.[1]  Philips is organized into three main divisions: Philips Consumer Lifestyle, Philips Healthcare and Philips Lighting.  As of 2012, Philips is the largest manufacturer of lighting in the world.

5.      In September 2006, Philips sold its semiconductor business to NXP B.V. ("NXP").   In connection with that transaction, Philips and NXP executed an Intellectual Property Transfer and License Agreement (the "Philips-NXP IPTLA") under which Philips transferred to NXP certain intellectual property and intellectual property licenses that were used in the semiconductor business (the "Semiconductor IP").[2]

6.      Among other things, under the Philips-NXP IPTLA, Philips retained a license to utilize certain Semiconductor IP in certain portions of its business [*See* Philips-NXP IPTLA, §§ 3.1 and 3.2], and  in the event Philips elected to sell or transfer those portions of its business, that retained license could be extended to the sold or transferred business.  *See* Philips-NXP IPTLA, §§ 3.5 and 3.6.  The agreement also provided that if NXP sold a business that was using the Semiconductor IP (*e.g.* its Home Business (as defined below)), then the license granted by Philips to NXP could be assigned to the purchaser. *See* Philips-NXP IPTLA, §§ 4.14 and 4.15.

7.      In June 2007, Philips and NXP entered into a Technology Access & Patent Transfer Agreement ("the Philips-NXP TAPA"), under which Philips sold some of its Motion Estimation/Motion Compensation patents to NXP, again subject to a retained license for Philips, and in the event Philips elected to sell or transfer those portions of its business, that retained

---

[1]      Philips' corporate seat is High Tech Campus 5, 5656 AE Eindhoven, The Netherlands.

[2]      A copy of the Philips-NXP IPTLA is annexed hereto as Exhibit A.

license could be extended to the sold or transferred business. *See* Philips-NXP TAPA § 3.1.  In addition to the purchase price, NXP would pay a share of its income earned by licensing the Motion Estimation/Motion Compensation patents. *Id.*, § 5.

8.    In or about October 2009, NXP and the Debtors entered into that certain Share Exchange Agreement (the "SEA")  pursuant to which NXP sold certain assets and business operations/activities (collectively, the "Home Business") to Trident Far East.  Pursuant to the Philips-NXP IPTLA, Trident Far East requested that Philips grant it a license in certain of the Semiconductor IP to be used in the operation of the Home Business.

9.    In May 2011, Philips and Trident Far East entered into that certain Divested Company Agreement, effective as of February 8, 2010 (the "Divested Company Agreement").[3] As relevant to the STB Business Sale, in the Divested Company Agreement, Trident Far East agreed that the intellectual property transferred pursuant to the SEA is (i) subject to Philips' rights under the Philips-NXP IPTLA [*See* Divested Company Agreement, § 2.2], (ii) subject to Philips' rights under the Philips-NXP TAPA [*See* Divested Company Agreement, § 2.2], and (iii) subject to the payment of certain royalty payments.  As of the Petition Date, Philips estimates that approximately $800,000 was due and owing to it under the Divested Company Agreement.

*The STB Business Sale*

10.    Shortly after the Petition Date, the Debtors filed the Sale Motion, pursuant to which they seek entry of an order authorizing (i) the free and clear sale (the "STB Business Sale") of certain tangible and intangible assets related to their STB Business and (ii) assumption and assignment of certain executory contracts and unexpired leases related to their STB Business (collectively, the "Purchased Assets") to Entropic Corporation (the Stalking Horse Bidder) or

---

[3]    A copy of the Divested Company Agreement is annexed hereto as Exhibit B.

other Prevailing Bidder at the Auction (collectively, with Entropic Corporation, the "Purchaser").

Among the Purchased Assets is the Intellectual Property Transfer and License Agreement dated

February 7, 2010 among NXP B.V. and NXP Holding I B.V. (the "NXP IP Agreement"). NXP

Holding I B.V. was subsequently transferred by NXP to Trident Far East in connection with

Trident Far East's acquisition of the Home Business. As is clear from § 3.5 of the NXP IP

Agreement, Semiconductor IP transferred under that agreement is subject, amongst others, to

Philips' rights under the Philips-NXP IPLTA and the Philips-NXP TAPA.

      11.    In other words, by their Sale Motion, the Debtors seek to convey the Purchased

Assets to the Purchaser free and clear of any interests Philips has in the Purchased Assets.

However, the Debtors have no authority for separating the Purchased Assets from Philips'

interests in them as provided in the Divested Company Agreement. In order for the Debtors to

sell any assets related to the Home Business, they must comply with the Divested Company

Agreement by paying royalties due thereunder and, more importantly, requiring that the

Purchaser comply with the requirements of the Philips-NXP IPTLA and the Philips-NXP TAPA

by ensuring that Philips maintains its license to utilize the Semiconductor IP and the Motion

Estimation/Motion Compensation patents, and in the event Philips elected to sell or transfer

those portions of its business, to have that retained license extended to the sold or transferred

business.

## ARGUMENT

      12.    Bankruptcy Code § 365(f) provides that a debtor may only assign an executory

contract if the debtor first assumes such contract and if the assignee provides adequate assurance

of future performance. See 11 U.S.C. § 365(f). In turn, Bankruptcy Code § 365(b) provides that a

debtor may only assume an executory contract if the debtor first cures any outstanding defaults under such contract. *See* 11 U.S.C. § 365(b).

13.    In addition, a debtor may not assume an executory contract in part and reject it in part. *See In re Abitibibowater Inc.*, 418 B.R. 815 (Bankr. D.Del. 2009) ("An executory contract must be assumed or rejected *in toto*") (citing *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 41 (3d Cir. 1989); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D.Del. 2008) ("If the debtor decides to assume a lease, however, it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed.")).

14.    Here, the Debtors have failed to satisfy any of these requirements.

15.    First, the Debtors attempt to pick and choose only the favorable terms of the Divested Company Agreement to be assumed. In order to assume and assign to the Purchaser any part of the Divested Company Agreement, including provisions granting the Debtors rights with respect to the Semiconductor IP, the Debtors must first assume the Divested Company Agreement *in toto* and only then assign the entire agreement to the Purchaser.

16.    Second, the Debtors must cure any outstanding defaults under the Divested Company Agreement. As of the Petition Date, the Debtors owed Philips approximately $800,000 under the Divested Company Agreement, and Philips estimates that an additional $200,000 has accrued since the Petition Date.[4] Accordingly, if the Debtors assume the Divested Company Agreement in whole, as they must, they must promptly cure any outstanding defaults.

---

[4]    Under the Divested Company Agreement and in particular under section 5.4 of the Technology Access & Patent Transfer Agreement attached as Annex 2 to that Divested Company Agreement, it is Trident Far East that has to provide quarterly reports of what it owes to Philips. As Trident Far East has failed to provide quarterly reports after the first half of 2011, Philips can do nothing but assume that the income in the second half was the same as that in the first half of 2011, viz. about $800,000.

17.    Third, not only have the Debtors failed to provide adequate assurance of future performance, they affirmatively assert that the liabilities under the Divested Company Agreement will be excluded from the STB Business Sale. In other words, the Debtors have provided assurance of future *non*-performance. Absent assurance from the Purchaser that it will perform all of the obligations under the Divested Company Agreement, including obligations related to Philips' rights to have its retained license extended to a sold or transferred business in the event Philips elects to sell or transfer related portions of its business, the Debtors should not be permitted to assign it.

## CONCLUSION

Accordingly, and for all the foregoing reasons, Philips respectfully requests that the Court deny the Sale Motion, unless the Debtors (i) assume the Divested Company Agreement *in toto*, (ii) promptly pay cure costs on account of the Divested Company Agreement and (iii) require the Purchaser to assume all of the liabilities and obligations associated with the Divested Company Agreement and provide adequate assurance of future performance of such liabilities.

Dated:  February 17, 2012

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Colm F. Connolly*
    Colm F. Connolly (#3151)
    cconnolly@morganlewis.com
    The Nemours Building
    1007 N. Orange Street, Suite 501
    Wilmington, DE 19801
    Telephone: (302) 574-7290

    James L. Garrity, Jr.
    Patrick D. Fleming
    101 Park Avenue
    New York, New York  10178
    Telephone: (212) 309-6000

*Counsel for Koninklijke Philips Electronics N.V.*