IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------X
: Chapter 11
*In re* :
: Case No. 12-10069 (CSS)
Trident Microsystems, Inc., *et al.*,[1] :
: Jointly Administered
Debtors :
: **Re: Docket No. 14, 207 and 270**
----------------------------------------------------------------x

**SUPPLEMENT TO RESERVATION OF RIGHTS AND LIMITED OBJECTION OF THE STATUTORY COMMITTEE OF EQUITY SECURITY HOLDERS TO MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTIONS 105(A), 363 AND 365 OF THE BANKRUPTCY CODE FOR AN ORDER (I)(A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN OF THE DEBTORS' ASSETS RELATED TO THEIR SET TOP BOX BUSINESS; (B) APPROVING THE STALKING HORSE PROTECTIONS; (C) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (D) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS RELATED TO THEIR SET TOP BOX BUSINESS PURSUANT TO SUCCESSFUL BIDDER'S ASSET PURCHASE AGREEMENT FREE AND CLEAR OF LIENS, CLAIMS ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (C) GRANTING RELATED RELIEF AND LIMITED OBJECTION TO MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 (A), 363(B) AND 365 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004 (A) APPROVING ASSUMPTION OF MANUFACTURING SERVICES AGREEMENT AND RELATED CURE AMOUNT, AND AUTHORIZING SATISFACTION THEREOF BY DEBTORS, (B) AUTHORIZING DEBTORS' ENTRY INTO (I) AMENDED AND RESTATED MANUFACTURING SERVICES AGREEMENT AND (II) SUPPORT AGREEMENT, AND (C) APPROVING <u>ASSIGNMENT OF SUCH EXECUTORY CONTRACTS</u>**

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Trident Microsystems, Inc. (6584) and Trident Microsystems (Far East) Ltd. The mailing address of each of the Debtors, solely for purposes of notices and communications, is 1170 Kifer Road, Sunnyvale, California 94086.

The statutory committee of equity security holders (the "Equity Committee")[2] in the chapter 11 cases of the above-captioned debtors in possession (collectively, the "Debtors") submits this Supplement to Reservation of Rights and Limited Objection (the "Limited Objection") with respect to the *Motion of the Debtors and Debtors in Possession Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for an Order (i)(a) Approving Procedures in Connection with the Sale of Certain of the Debtors' Assets Related to Their Set Top Box Business; (b) Approving the Stalking Horse Protections; (c) Scheduling the Related Auction and Hearing to Consider Approval of Sale; (d) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (e) Approving the Form and Manner of Notice Thereof; and (g) Granting Related Relief; and (ii)(a) Authorizing the Sale of Certain of the Debtors' Assets Related to Their Set Top Box Business Pursuant to Successful Bidder's Asset Purchase Agreement Free and Clear of Liens, Claims Encumbrances, and Other Interests; (b) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (c) Granting Related Relief*, dated January 4, 2012 [D.I. 14] (the "Sale Motion"), and *Limited Objection to Motion of Debtors and Debtors in Possession for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 365 and Federal Rule of Bankruptcy Procedure 6004 (a) Approving Assumption of Manufacturing Services Agreement and Related Cure Amount, and Authorizing Satisfaction Thereof by Debtors, (b) Authorizing Debtors' Entry Into (i) Amended and Restated Manufacturing Services Agreement and (ii) Support Agreement, and (c) Approving Assignment of Such Executory Contracts*, dated March 1, 2012 [D.I. 270] (the

---

[2] The following shareholders comprise the Equity Committee:  Mr. Barry A. Shaw Sr.; Brencourt Credit Opportunities Master Fund, L.P.; and Mr. Toan Tran.

"MSA Assumption Motion") and in further support hereof respectfully represents as follows:

## BACKGROUND

1. On January 4, 2012 (the "Petition Date"), the Debtors, Trident Microsystems Inc. ("TMI") and Trident Microsystems (Far East) LTD ("TMFE") filed voluntary petitions for relief pursuant to title 11, United States Code, as amended (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. According to the petitions and first-day pleadings, the Debtors have no secured or prepetition interest-bearing debt. In fact, the Debtors have approximately $192 million of unsecured debt obligations, of which $125 million constitutes intercompany payables, and the remaining $65 million represents unsecured trade and service claims. The lead chapter 11 Debtor, TMI, has roughly 183 million publicly-traded shares of common stock outstanding. The Debtors have no debtor-in-possession financing, and as of the Petition Date were holding approximately $54 million in cash.

4. According to the first day pleadings and public filings, the Debtors acquired their set-top box business (the "STB Business") and other assets in sale and purchase arrangement with NXP B.V. (the "NXP Acquisition") that was consummated

on February 8, 2010. As a result of the terms of the NXP Acquisition, NXP B.V. is not only the Debtors' largest shareholder (holding approximately 57% of its outstanding common stock) and largest unsecured creditor (holding approximately $27 million in trade claims), but also an entity that appointed four of the nine directors sitting on the Debtors' board of directors within one year prior to the Petition Date. Moreover, NXP is the largest vendor to TMFE and also provides back office and management services to the Debtors.

5. On the Petition Date, the Debtors filed the Sale Motion, pursuant to which they sought approval of bid procedures and authority to consummate a sale of the STB Business to a stalking horse bidder, Entropic Communications Inc. ("Entropic"), for approximately $55 million, subject to higher and better offers. A hearing on the bid procedures portion of the Sale Motion was held on January 18, 2012, at which time the Court approved [D.I. 72] the bid procedures, which included an auction scheduled for February 23, 2012 (the "Auction").

6. On January 18, 2012, the Office of the United States Trustee (the "U.S. Trustee") appointed a statutory creditors' committee in the chapter 11 case of TMFE (the "Creditors' Committee"). The Creditors' Committee does not represent the interests of the TMI estate — the entity that issued the common stock, including the stock issued to NXP B.V. — in any respect, except that the TMI estate is the largest creditor of TMFE.

7. On February 14, 2012, the U.S. Trustee appointed the Equity Committee. On that date, the Equity Committee selected Dewey & LeBoeuf LLP and Bayard, P.A. as proposed attorneys. On February 16, 2012, the Equity Committee selected Alvarez & Marsal North America, LLC ("A&M") as its financial advisor. The Equity Committee

4

has recently retained Quinn Emanuel Urquhart and Sullivan, LLP ("Quinn Emanuel") as proposed conflicts and litigation counsel.

8. Beginning on February 16, 2012, and continuing to the present, the Equity Committee's professionals have requested information and documentation from the Debtors and their financial advisors, FTI Consulting, Inc. concerning, among other things, the Entropic APA.

9. On February 17, 2012, the Equity Committee filed a reservation of rights in response to the Sale Motion, which, among other items, specifically reserved all rights, claims, remedies, defenses, and interests with respect to the Sale Motion.

10. The Auction was conducted on February 23 and 24, 2012. At the conclusion of the Auction and competitive bidding, the Debtors declared Entropic the highest and best bidder based on its bid of $65 million (the "Entropic APA") for the acquisition of the STB Business, including all avoidance actions related to the STB Business under Bankruptcy Code sections 544, 547, 548, 549 and 550 (the "STB Avoidance Actions").

11. The STB Avoidance Actions include (i) potential preference claims against vendors, including NXP Semiconductors, which received over $161 million in payments from TMFE in the one year prior to the Petition Date, (ii) possible fraudulent transfer actions that may exist, including potential fraudulent transfer claims against NXP that may be related to the NXP Acquisition or the provision of goods and services under certain agreements known as the Manufacturing Services Agreement ("MSA") and the Transition Services Agreement ("TSA"), and (iii) possible claims under section 549 for return of unauthorized postpetition transfers.

12. Notwithstanding this Court's $2 million limitation on the payment of "Critical Vendor" claims [D.I. 128], the Equity Committee has been informed by the Debtors' professionals that well over $10 million has been paid postpetition to NXP by the Debtors and certain non-Debtor affiliates. Further, it is estimated that post-petition payments to NXP (including cure costs) are expected to exceed $35 million through April 2012, a substantial amount of which, based upon information and belief, is on account of prepetition debt. The ability to review certain post-petition transactions under section 549 of the Bankruptcy Code is being sold to Entropic – arguably releasing any such claims the Debtors may have on account of such post-petition transfers.

13. While such claims may belong to the Debtors, and not the Committees, the Debtors' cash management order [D.I. 133], entered January 30, 2012, provides that "The Debtors shall not permit their non-debtor subsidiaries to make any transfers on account of prepetition obligations owed by the Debtors without notice and consent of the [Creditors'] Committee, which consent shall not be unreasonably withheld." At the hearing on February 24, 2012, the Court ordered that rights applicable to the Creditors' Committee shall be equally applicable to the Equity Committee. Because such post-petition transfers occurred prior to the formation of the Equity Committee, the Equity Committee was not consulted regarding any such transfers, and did not have an opportunity to review such transfers and provide consent.

14. The MSA and TSA were originally negotiated in connection with the NXP Acquisition. Pursuant to those agreements, NXP provided goods and services to the Debtors, including order fulfillment and delivery, accounting services and financial reporting services human resources management (including compensation and benefit

plan management, payroll services and training), pensions, office and infrastructure services (including access to certain facilities for a limited period of time), sales and marketing support, supply chain management (including logistics and warehousing), quality control, financial administration, ICT hardware and ICT software and infrastructure, general IT services, export, customs and licensing services, telecommunications, and contract manufacturing services for finished goods as well as certain front end, back end and other related manufacturing services.  *See*, TMI 10-K for the fiscal year ended December 3, 2010, p. 94.

15. As a condition to closing, the Entropic APA requires that Entropic enter into an MSA and TSA with NXP.  *See*, Entropic APA, 2.3(l).  The Equity Committee understands and believes that NXP negotiated with Entropic and the Debtors to require that the MSA and TSA, as revised by NXP, be assumed by the Debtors and assigned to Entropic pursuant to Bankruptcy Code section 365, thus requiring that all amounts due and owing to NXP under the MSA and TSA be cured.  The process of revising the MSA and TSA provides NXP with an opportunity to negotiate favorable terms for itself, prior to assumption, including payment terms, minimum purchase commitments, pricing (product and services), satisfaction of open purchase orders, lead times, return provisions and warranty rights.  On February 29, 2012, the Equity Committee received from Debtors' counsel drafts of the amended MSA and TSA.  The Equity Committee has not seen final versions of the MSA and TSA, and following a request for them, was advised that the Debtors' financial advisors do not know when the agreements will be finalized.  Thus, the Equity Committee has not been able to compare the terms of the new MSA and TSA with the original MSA and TSA.

16. On the same day that the Auction concluded, February 24, 2012, counsel for the Equity Committee informed the Court at an omnibus hearing that the Equity Committee was continuing its review of the sale, which involves seeking information from the Debtors concerning avoidance actions that are being sold and contracts and agreements that are being drafted. Later that day, the Equity Committee served on NXP Semiconductors a notice of Rule 30(b)(6) deposition for March 2, 2012, and request for production of documents by February 29, 2012 o (the "<u>NXPS Discovery Request</u>") and served on the Debtors a notice of Rule 30(b)(6) deposition for March 1, 2012 and a request for production of documents for February 28, 2012 (the "<u>Debtors Discovery Request</u>"). On February 27, 2012, the Equity Committee served on NXP B.V. a notice of deposition for March 5, 2012 and a request for discovery on March 2, 2012 on NXP B.V. and on NXP Semiconductors an amended NXPS Discovery Request.

17. In response to the Debtors' Discovery Request and requests made pursuant to Bankruptcy Code section 1003, the Debtors have provided the Equity Committee with documentation and some analysis with respect to the sale of the STB Avoidance Actions, but the Equity Committee has not received all documentation that it requested from the Debtors. On February 27, 2012, counsel for NXP Semiconductors and NXP B.V. advised the Equity Committee that they would produce no documents or witnesses

18. On March 1, 2012, the Equity Committee filed its *Emergency Motion of the Statutory Committee of Equity Security Holders to Compel NXP Semiconductors Netherlands B.V. and NXP B.V. to Respond to Discovery Requests* (the "<u>Motion to Compel</u>"). In the Motion to Compel, the Equity Committee sought Rule 30(b)(6) witnesses and production of documents in four areas of inquiry only. In response, NXP

filed its *Response of NXP Semiconductors Netherlands B.V. and NXP B.V. to Emergency Motion of the Statutory Committee of Equity Security Holders to Compel NXP Semiconductors Netherlands B.V. and NXP B.V. to Respond to Discovery Requests and Cross-Motion for Entry of a Protective Order* (the "Protective Order Motion"). At a hearing conducted on March 2, 2012 (the "Discovery Hearing"), the Court heard argument on the Motion to Compel and the Protective Order Motion (together the "Discovery Motions") and denied both without prejudice.

19. During the Discovery Hearing, counsel represented to the Court that it was Entropic – not NXP – which demanded the effective release of certain avoidance actions, including against NXP, and thus was the party that first included the purchase of the STB Avoidance Actions in any proposed Entropic contract (the "Avoidance Action Representation"). Also during the Discovery Hearing, the Court noted that the Debtors were best positioned and therefore the appropriate parties from which to seek additional information and documents. Consistent with the Court's observations, on March 3, 2012, the Equity Committee requested from the Debtors documents related to the Avoidance Action Representation

20. In particular, by email on March 3, 2012, the Equity Committee requested the Debtors produce materials to substantiate their representations to the Court at the Discovery Hearing, including, in particular, the following:

- The initial non-binding term sheet from Entropic (the "Term Sheet"), discussed by the Board of Directors at their June 3, 2011 board meeting.

- The non-binding "counter proposal" to Entropic as reviewed at the Board meeting held on October 26, 2011 (the "Counter Proposal").

- The so-called "new proposal" from Entropic provided to the Board of Directors at their December 18, 2011 meeting (the "New Proposal"); and

9

- The first draft of the Entropic APA (the "First Draft"), including any correspondence or cover-email by which the first draft of the Entropic APA was transmitted from Entropic to Trident.[3]

21. The Equity Committee requested that the Debtors produce, at a minimum, the four non-privileged items listed above by no later than Noon on March 4, 2012 and any correspondence supporting the assertion that it was Entropic that requested purchase of the STB Avoidance Actions. Later that night on March 4, 2012, the Equity Committee received documents responsive to their requests; however, the Debtors did not provide anything that would support their assertion that Entropic insisted on the sale of the Avoidance Actions.

22. A hearing to consider the Sale Motion, the Entropic APA and the MSA Assumption Motion is currently scheduled for March 6, 2012 (the "<u>Sale Hearing</u>").

**LIMITED OBJECTION**

23. The Equity Committee has been prevented from forming a more fulsome position in support of or opposition to the sale of the Debtors' assets to Entropic by the limited information available to it with which to evaluate (i) the Debtors' exercise of their business judgment and (ii) the benefit to each of the Debtors' estates of the sale of the STB Avoidance Actions.

24. The Equity Committee has concluded that examination of all parties' involvement in the sale process that led to the Auction and the final Entropic APA is essential to the fulfillment of its fiduciary obligations. A controlling party's involvement

---

[3] To be clear, the Equity Committee requested the board minutes from the Debtors on February 16, 2012. The Debtors produced the Board Minutes on Friday, March 2, 2012 at 2:38 PM – 20 minutes before the Discovery Hearing, and more than 2 weeks after the Equity Committee's request. Thus, the Equity Committee only learned of the existence of the Term Sheet, Counter Proposal, and the New Proposal on Friday, the day before they made the request for the documents from the Debtors.

in the discussions and negotiation leading to the initial Entropic APA and the final Entropic APA mandates review given such party's status. Here, because NXP is a majority and controlling shareholder, the largest vendor, and (until recently) held a number of seats on the Debtors' board, NXP's involvement in all aspects of this transaction must be subject to heightened scrutiny, particularly when it is receiving an effective release under the terms of the asset sale of certain causes of action the estates may have against it.

25.     In sum, NXP's involvement with, and likely control over, the Debtors and with the sale of the STB Business to Entropic was pervasive. Because of NXP's insider status, because the Sale Motion is being heard only three weeks after the Equity Committee was formed, and because the Equity Committee is being asked to consider the sale based on very limited information, at a minimum, the Equity Committee has proposed language for the order approving the Sale Motion to preserve any claims related to the sale process except those expressly assigned (the "<u>Claim Preservation Language</u>").

26.     The Equity Committee's Claim Preservation Language, which has been shared with counsel for the Debtors, the Creditors Committee, NXP, and Entropic, is:

> The Court's approval of this Sale and assumption or assignment of the MSA or the TSA (both as may be amended) and entry of this order is and shall be without prejudice to or effect (including collateral estoppel or res judicata) on any rights, claims, causes of action, defenses or interests of the Debtors, creditors or equity holders or any statutory committee appointed in any of the bankruptcy cases with respect to any person or entity (whether arising in law or equity), except for those Avoidance Actions (as defined in the APA) expressly conveyed in the APA (and listed in the Schedules thereto) (collectively, the "Retained Actions"), provided, however, that nothing herein shall deprive Buyer of the protections afforded by 11 U.S.C. §363(m).
>
> Subject to paragraph 13 hereof, nothing in this order or the APA shall be admissible in, or operate in any way to release, limit, preclude, or hinder

11

the investigation or pursuit of the Retained Actions, and no waiver, assignment or release of any of the Retained Actions, including but not limited to any claim for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, subordination, set off, recoupment or recharacterization, whether or not arising out of any actions taken in connection with the sale or the APA, shall be construed or implied on the part of any person or entity or statutory committee appointed in either of these cases by entry of this order.

27.     Based upon the documents provided to the Equity Committee by the Debtors as of the time of this filing, the Debtors have left the Equity Committee with no choice but to object to the sale of the STB Avoidance Actions to Entropic. At a minimum, however, and in any event, the Claims Preservation Language should be included in any order approving the sale. The Equity Committee will continue working with the parties in an effort to resolve its concerns.

*Remainder of page intentionally left lank*

**RESERVATION OF RIGHTS**

Accordingly, the Equity Committee respectfully reserves any and all of its rights with respect to the Sale Motion and the MSA Assumption Motion, particularly its right to further supplement this Limited Objection.

Dated: March 5, 2012  
      Wilmington, Delaware

BAYARD, P.A.

*/s/ Jamie L. Edmonson*  
Neil B. Glassman (No. 2087)  
Charlene D. Davis (No. 2336)  
Jamie L. Edmonson (No. 4247)  
GianClaudio Finizio (No. 4253)  
222 Delaware Avenue, Suite 900  
Wilmington, Delaware 19801  
Telephone: (302) 655-5000  
Facsimile: (302) 658-6395  
Email: nglassman@bayardlaw.com  
      cdavis@bayardlaw.com  
      jedmonson@bayardlaw.com  
      gfinizio@bayardlaw.com

*Proposed Attorneys for the Statutory Committee of Equity Security Holders of Trident Microsystems, Inc., et. al.*