# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                   :
In re                              :  Chapter 11
                                   :
Trident Microsystems, Inc., et al.,¹  :  Case No. 12-10069 (CSS)
                                   :
               Debtors.            :  (Jointly Administered)
                                   :
                                   :  Re: Docket No. 14
-------------------------------------------------------------x
```

**ORDER (A) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS RELATED TO THEIR SET TOP BOX BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS PROVIDED IN THE ENTROPIC COMMUNICATIONS, INC. ASSET PURCHASE AGREEMENT; (B) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (D) GRANTING RELATED RELIEF**

This matter coming before the motion (the "Motion")² of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "Local Rules") (i)(a) approving procedures in connection with the sale of certain of the Debtors' assets related to their

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Trident Microsystems, Inc. (6584) and Trident Microsystems (Far East) Ltd. The mailing address of each of the Debtors, solely for purposes of notices and communications, is 1170 Kifer Road, Sunnyvale, California 94086.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

set top box business (the "STB Assets")[3]; (b)  approving the Stalking Horse Protections; (c)

scheduling the related auction and hearing to consider approval of sale; (d) approving procedures

related to the assumption and assignment of certain of the Debtors' executory contracts and

unexpired leases; (e) approving the form and manner of notice thereof; and (f) granting related

relief; and (ii)(a) authorizing the sale of such assets free and clear of liens, claims, encumbrances,

and other interests, except as provided by an Asset Purchase Agreement; (b) approving the

assumption and assignment of certain of the Debtors' executory contracts and unexpired leases

related thereto; and (c) granting related relief; after holding hearings on January 18, 2012 and

February 6, 2012 (the "Procedures Hearing") this Court entered orders dated January 18, 2012

and February 7, 2012 (the "Procedures Order"), (A) Establishing Bidding and Auction

Procedures Related to the Sale of the STB Assets; (B) Approving Bid Protections for the Sale of

the STB Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of All of the STB

Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for

Executory Contracts and Leases To Be Assigned; and (E) Granting Certain Related Relief; and

the Auction having commenced on February 23, 2012 (and concluded on February 24, 2012), for

the consideration of Qualified Bids and the selection of a Successful Bidder (each as defined in

the Procedures Order) and Entropic Communications, Inc. (together with its successors and

assigns, "Entropic") having been selected as the Successful Bidder; and upon Entropic and the

Debtors having entered into that certain Asset Purchase Agreement, dated as of January 18, 2012

(attached hereto as Exhibit A, and as amended, supplemented or restated, the "Purchase

Agreement"), together with all other agreements contemplated by the Purchase Agreement, (the

"Ancillary Documents"); and the Bankruptcy Court having conducted a hearing on the Motion

---

[3]    As used in this Order, the term "STB Assets" includes all Purchased Assets (as that term is defined in the
Purchase Agreement (defined below)).

on March 6, 2012 (the "Sale Approval Hearing"); and all parties in interest having been heard or having had the opportunity to be heard, regarding the Purchase Agreement; and the Bankruptcy Court having reviewed and considered the Motion and all objections thereto (such filed objections being referred to as the "Filed Objections"), and the arguments of counsel made, and the evidence adduced, at the Procedures Hearing and the Sale Approval Hearing; and upon the record of the Procedures Hearing and the Sale Approval Hearing and these chapter 11 cases and proceedings, and after due deliberation thereon, and good cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[4]

A.    **Jurisdiction and Venue**. This Court has jurisdiction over the Motion and the Transactions under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 and the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

C.    **Sale Notice**. As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Approval Hearing and as approved under the Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Approval Hearing and the Transactions has been provided to all parties in interest, in light of the circumstances of the Debtors and the depreciating nature of the Debtors' assets; (ii) such notice was and is good, sufficient and appropriate under the circumstances of the

---

[4]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. See Fed. R. Bankr. P. 7052.

Debtors' chapter 11 cases and was provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006 and 9007 and the Local Rules; and (iii) no other or further notice of the Motion, the Auction, the Sale Approval Hearing, the Transactions, or of the entry of this Sale Order is necessary or shall be required.

D.  **Cure Notices**.  Cure Notices of assignment and Cure Amounts have been provided to all of the counterparties to executory contracts and unexpired leases of personal and real property (the "Assumed Executory Contracts").  Such Cure Notices were adequate and sufficient for the assumption and assignment of the Assumed Executory Contracts which may be designated by Entropic, all in accordance with and as provided by the Procedures Order

E.  **Opportunity to Object**.  A reasonable opportunity to object and to be heard with respect to the sale of the STB Assets, the potential assumption and assignment of the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it and the defaults and Cure Amounts related thereto, the process for assuming and assigning additional executory contracts and unexpired leases of personal and real property and determining the applicable Cure Amounts, the Transactions, the Motion and the relief requested therein has been given to all interested persons and entities, including, without limitation, the following: (i) all counterparties to the Assumed Executory Contracts, (ii) all parties listed on the Master Services List, and (iii) all applicable federal, state and local taxing and regulatory authorities.

F.  **Auction**.  Potential bidders had the full and fair opportunity to submit bids and participate in the Auction on the terms set forth in the Procedures Order.  The Auction was conducted fairly and in good faith, and in accordance with the Procedures Order.  At the Auction, Entropic was selected as the Successful Bidder.  The Purchase Agreement constitutes the highest and best offer for the Assets under the facts and circumstances of these cases, and

will provide a greater recovery for the Debtors' estates than would be provided by any other presently available alternative.  The Debtors' determination that the Purchase Agreement constitutes the highest and best offer possible under the facts and circumstances of these cases, for the STB Assets at the Auction constitutes a valid and sound exercise of the Debtors' business judgment.

G.  **Purchased Assets**.  The STB Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors have all right, title, and interest in the STB Assets required to transfer and convey the STB Assets as contemplated by the Purchase Agreement and the Ancillary Agreements.

H.  **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications for, and (ii) compelling circumstances to consummate the transaction contemplated by the Purchase Agreement (the "Transactions") other than in the ordinary course of business under Bankruptcy Code section 363(b) and before, and outside of, a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of depreciation of the value of the STB Assets if the sale is not consummated quickly; (ii) the Purchase Agreement constitutes the highest and best offer for the Assets under the facts and circumstances of these cases; (iii) the Purchase Agreement and the Closing (as defined in the Purchase Agreement) will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses; and (iv)

unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the Purchase Agreement, potential creditor recoveries may be substantially diminished.

I.      **Arm's-Length Sale**.  The Purchase Agreement and Ancillary Agreements and other documents and instruments related to and connected with the Transactions and the consummation thereof were negotiated, proposed and entered into in good faith and from arm's-length bargaining positions.  Neither Entropic nor any of its representatives is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither the Debtors, Entropic or their representatives has engaged in any conduct that would cause or permit the Purchase Agreement or any Ancillary Agreements or other documents and instruments related to or connected with the Transactions and the consummation thereof to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  The terms and conditions of the Purchase Agreement, Ancillary Agreements, and other documents and instruments related to and connected with the Transactions and the consummation thereof, and the Transactions themselves, including without limitation the consideration provided in respect thereof, are fair and reasonable, and the Transactions are not avoidable and shall not be avoided under section 363(n) of the Bankruptcy Code.

J.      **Good Faith Purchaser**.  Entropic has proceeded in good faith in all respects in connection with this proceeding and is therefore entitled to all of the benefits and protections section 363(m) of the Bankruptcy Code.  No stay pending appeal of this Sale Order has been requested, and the stay contained in Fed. R. Bankr. P. 6004(h) has been and hereby is expressly waived as set forth herein.

K.      **Cure/Adequate Assurance**.  The assumption and assignment or transfer of the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it pursuant to

the terms of the Purchase Agreement, Procedures Order and this Sale Order or such further order of the Court, is integral to the Purchase Agreement, does not constitute unfair discrimination, and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Debtors have or will have as of the assumption and assignment of any contract or lease to Entropic to the extent necessary and as required under the Purchase Agreement, cured or provided adequate assurance of cure, of any default existing prior to the effective date of such assumption and assignment with respect to the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code.  Based on the evidence adduced at the Sale Hearing, Entropic has provided sufficient adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code, to the extent that any such assurance is required and not waived by the counterparties to Assumed Executory Contracts. To the extent any objections relate to any unresolved Cure Amounts, any objections to any Cure Amount or defaults under Assumed Executory Contracts, or the assumption and assignment of any of the Assumed Executory Contracts to Entropic, including without limitation the Filed Objections, are hereby overruled, withdrawn or otherwise treated as set forth herein.

L.    **Contract Assignments in Best Interests**.  The Debtors have demonstrated that assuming and assigning the Assumed Executory Contracts in connection with the Transactions is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates, for the reasons set forth in the Motion and on the record at the Sale Approval Hearing, including, without limitation, because the assumption and assignment of the Assumed Executory Contracts in connection with the Transactions will

maintain the ongoing business of the Debtors, limit the losses of counterparties to Assumed Executory Contracts, and maximize the distribution to creditors of the Debtors.

M.   **Free and Clear**.  The transfer of the STB Assets to Entropic under the Purchase Agreement will be a legal, valid, and effective transfer, and will vest at the Closing Entropic with all right, title, and interest of the Debtors to the STB Assets free and clear of all of the following (collectively, "Interests") liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment (to the extent permitted under applicable law), or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, (i) those Interests that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the STB Assets, or any similar rights if any; (ii) those Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, (iii) those Interests that are Excluded Liabilities set forth in the Purchase Agreement; and (iv) those Interests arising in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or representatives.  For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment of any Assumed Executory Contract that Entropic elects to have assumed and assigned to it is free and clear of all Interests, with all

such Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Closing.

      N.   **No Successor Liability**.  For the avoidance of doubt, to the fullest extent permitted by applicable law, notwithstanding the consummation of the Transactions and the employment by Entropic of certain persons previously employed by the Debtors, Entropic shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or for the benefit of the Debtors' employees, and any obligations of Entropic to any such person shall be limited to (i) those obligations expressly agreed by Entropic with such person on and following the later of the Closing and the date, if any, that such person first becomes employed by Entropic, and (ii) those obligations explicitly assumed by Entropic under the Purchase Agreement.

      O.   **Avoidance Action Purchases are Required**.  Based on the representations presented to the Court, the avoidance action purchases described in section 1.1(r) of the Purchase Agreement, including without limitation the purchase by Entropic of any causes of action under sections 544, 547, 548, 549 and 550 of the Bankruptcy Code that each Debtor and each Debtor's bankruptcy estate may have related to the STB Assets, as set forth in the Purchase Agreement, are an express condition to Entropic's consummation of the Transactions and are required to implement the free and clear nature of the Transactions.  The Transactions viewed as a whole, together with such purchases, will provide a greater benefit to the Debtors, their estates, and their creditors than would the prosecution of the purchased causes of action in the absence of the Transactions.

P.    **Sale in Best Interests**.  Good and sufficient reasons for approval of the Purchase Agreement, Ancillary Agreements, and the Transactions have been articulated to the Court in the Motion and on the record at the Sale Approval Hearing, and the relief requested in the Motion and set forth in this Sale Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

Q.    **Cayman Sale Order**. The consummation of the transactions contemplated by the Purchase Agreement and the Closing are conditioned on the entry of an order in the Cayman Islands which, in recognition of this Order, grants and approves the terms, conditions and protections provided in this Order to the fullest extent permissible under the laws of the Cayman Islands.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.    **Motion is Granted**.  The Motion and the relief requested therein is **GRANTED** and **APPROVED** as set forth herein.

2.    **Objections Overruled**.  To the extent objections relate to Cure Amounts and adequate assurance, and Assumed Executory Contracts, to the extent of any unresolved Cure Amounts, the Filed Objections and any other objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Procedures Order, and the Procedures Order is a final order of the Bankruptcy Court, has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect.

3.    **Approval**.  The Purchase Agreement, the Ancillary Agreements, and, so long as consistent with the Purchase Agreement and this Order, all other documents and all other instruments related to and connected with the Transactions and the consummation thereof, and all of the terms and conditions thereto, are hereby approved.  Debtors are hereby authorized to (i) execute the Ancillary Agreements along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement and the Transactions, and any prior execution by the Debtors of such agreements, documents, and instruments is hereby ratified; (ii) perform all obligations under the Purchase Agreement, Ancillary Agreements, and other documents and instruments related to or connected with the Transactions and the consummation thereof, including but not limited to deeds, assignments, stock powers, and other instruments of transfer, and consummate the Transactions, and any prior performance of such obligations and any prior consummation of such Transactions is hereby ratified; (iii) upon designation by Entropic, assume and assign to Entropic the Assumed Executory Contracts; (iv) undertake the process of assuming and assigning the Real Property Leases to Entropic under the Procedures Order and this Sale Order; and (v) take all other and further actions as may be reasonably necessary to consummate and implement the Transactions and perform all obligations under the Purchase Agreement, the Ancillary Agreements, and all other documents and instruments related to and connected with the Transactions and the consummation thereof, without any further corporate action or orders of the Bankruptcy Court. Entropic shall have no obligation to proceed with the Closing until all conditions precedent to their obligations to do so have been met, satisfied or waived.

4.    **Valid Transfer**.  As of the Closing Date, (i) the consummation of the Transactions shall effect a legal, valid, enforceable and effective sale and transfer of the STB

Assets to Entropic, and shall vest Entropic with title to such STB Assets free and clear of all Interests of any kind whatsoever; and (ii) the Purchase Agreement, the Ancillary Agreements, any other documents or instruments related to or connected with the Transactions and the consummation thereof, and the Transactions shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors, any successor trustee appointed with respect thereto, and each other person and entity.

5.     **Free and Clear**.  Except as expressly provided for in the Purchase Agreement or this Sale Order, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Debtors are authorized and directed to transfer the STB Assets to Entropic and Entropic shall take title to and possession of the STB Assets, upon the Closing, free and clear of all Interests of any kind or nature whatsoever, with all such Interests to attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the STB Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

6.     **Limitation on Actions**.  The Sale is free and clear of all Claims and Interests other than Assumed Liabilities, and all such Claims and Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the Transaction in the order of their priority, with the same validity, force and effect which they have against such STB Assets as of the Closing, subject to any rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto.  Except as expressly permitted by the Purchase Agreement as to Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities (to the fullest

extent allowed by applicable law), lenders, trade creditors, contract counterparties, customers, landlords, licensors, employees, litigation claimants and other persons, holding Interests or Claims of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the STB Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the STB Assets, the operation of the Debtors' businesses before the Closing or the transfer of the Debtors' interests in the STB Assets to Entropic, shall not assert, prosecute or otherwise pursue Interests or Claims against Entropic, its property (including, without limitation, the STB Assets), its successors and assigns, or interfere with Entropic's title to, use or enjoyment of the STB Assets, in each case, without first obtaining an Order of this Court after notice and a hearing permitting such Interest or Claim to proceed.

7.    **General Assignment**.  On the date on which Entropic elects to have assumed and assigned to it by the Debtors an Assumed Contract or Real Property Lease (subject to the lessor's limited rights to object to the extent set forth herein), as applicable, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the STB Assets acquired by Entropic under the Purchase Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the STB Assets, including the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it and Real Property Leases, to Entropic.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments

necessary and appropriate to consummate the Transactions and to reflect the effectiveness of the Transactions.

8.    **No Successor Liability**.  To the fullest extent permitted by applicable law, neither Entropic nor its affiliates, successors or assigns shall, as a result of the consummation of the Transaction:  (i) be a successor to the Debtors or the Debtors' estates; (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the Debtors' estates; or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  Except for the Assumed Liabilities, Entropic shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law.  Except for the Assumed Liabilities, the transfer of the STB Assets to Entropic under the Purchase Agreement shall not result in (i) Entropic or the STB Assets having any liability or responsibility for any Interest against the Debtors or against an insider of the Debtors, (ii) the STB Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) Entropic or the STB Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement.

9.    **Assumption and Assignment**.  Pursuant to Bankruptcy Code sections 105(a), 363 and 365, and subject to and conditioned upon the Closing Date and the payment of the Cure Amounts stated on the Cure Schedule, attached hereto as Exhibit B, the Debtors' assumption and assignment to Entropic of the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it, and Entropic's acceptance of such assignment on the terms set forth in the Purchase Agreement, including Section 7.9 thereof, the Motion, and the Procedures Order,

are hereby approved.  As provided herein and in the Purchase Agreement, the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it shall be transferred to Entropic free and clear of all Interests of any kind or nature whatsoever, other than the Assumed Liabilities.  The Assumed Executory Contracts that Entropic elects to have assumed and assigned to it shall remain in full force and effect for the benefit of Entropic in accordance with their respective terms, notwithstanding any provision in any such Assumed Executory Contracts of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code that prohibits, restricts, or conditions such assignment, transfer or sublease.  Pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it arising after assignment to Entropic, except liability for Cure Amounts as set forth in the Purchase Agreement and as otherwise expressly set forth herein.  Debtors are hereby authorized to execute and deliver to Entropic such documents or other instruments as may be necessary to assign or transfer the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it to Entropic.  Other than with respect to assumed liabilities, each counterparty to an Assumed Contract that Entropic elects to have assumed and assigned to it is hereby deemed to have no claims against Entropic or the Debtors for, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinate) arising under or related to the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it

10.    **Adequate Assurance**.  The Debtors' obligation to pay the Cure Amounts and Entropic's performance of its obligations under the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it after the Closing shall constitute adequate assurance of

future performance within the meaning of sections 365(b)(1) and 365(f)(2)(B) of the Bankruptcy Code.

11.    **Cure Notices**.  The Debtors have served by first-class mail on all of the non-debtor counterparties to the Assumed Executory Contracts, a Cure Notice that included, to the extent applicable (i) the Contract, (ii) the name of the counterparty to the Contract, (iii) the Cure Amounts, and (iv) the deadline by which any such Contract counterparty must file an objection (the "Objection") to the proposed assumption and assignment and no other or further notice is required, except as otherwise provided herein.

12.    **Objections to Cure Notices**.  If a timely Objection is received and such Objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such Objection at a later date set by the Bankruptcy Court.  The pendency of a dispute relating to a particular Contract shall not, in the discretion of Entropic, delay the assumption and assignment of any other Contract or the Closing, provided that Entropic shall have no right to delay the Closing except as set forth in the Purchase Agreement.

13.    **Avoidance Actions**.  Neither the Debtors nor their estates, nor any person or entity (including, but not limited to any Chapter 11 trustee, creditor, equity holder, party-in-interest or official committee of the Debtors) claiming by, through or on behalf of the Debtors or their estates (including, but not limited to by operation of law, sale, assignment, conveyance or otherwise) shall pursue, prosecute, litigate, institute, commence, assert or file any fraudulent conveyance, preference or avoidance claims, or assert or use any such claims for defensive purposes (together, the "Preference Avoidance Claims")  (whether or not asserted as of the Closing) of the Company and the Seller Subsidiaries arising under (i) Sections 544, 547, 548, 549 and 550 of Chapter 5 of the Bankruptcy Code, (ii) the law of any foreign jurisdiction in

which the Sellers operate or are domiciled, or (iii) state law, including all rights, claims and causes of action arising out of any post-petition payment by the Company or any of the Seller Subsidiaries for goods or services, relating to: (x) vendors or service providers used in the STB Business; (ỹ) the Assumed Contracts and Transferred Leases, including that certain Manufacturing Services Agreement, as amended, dated as of February 8, 2010 between Trident Microsystems (Far East) Ltd. ("TMFE") and NXP (the "MSA"); and (z) Transferred Employees (provided, however, the Preference Avoidance Claims shall not include any claims or transfers among or between the Debtors or their Subsidiaries, or any claim for recharacterization, subordination, or breach of fiduciary duty or aiding and abetting same).  For the avoidance of doubt, each of the members of the Official Committee of Unsecured Creditors undertakes that, absent any material change in the facts and circumstances as currently known, it will not vote in favor of any resolution to authorize the official liquidators of TMFE, to the extent they are appointed, to pursue the Preference Avoidance Claims whether exercising its vote as a member of the liquidation committee in the official liquidation or otherwise.

14.   **Reservation of Rights**.  The Court's approval of this Sale and the assumption and assignment of the MSA and related Support Agreement and entry of this Order or any order approving such assumption and assignment is and shall be without prejudice to or effect (including collateral estoppel or res judicata) on any rights, claims, causes of action, defenses or interests, of the Debtors, creditors, equity holders or any statutory committee appointed in any of these bankruptcy cases with respect to any person or entity, including but not limited to any claim for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, setoff, recoupment, subordination or recharacterization, whether or not arising out of any actions taken in connection with the sale or the Purchase Agreement, except for those rights, claims, causes of

action, remedies or interests that cannot be pursued, prosecuted, litigated, instituted, commenced, asserted or filed, or used for defensive purposes, as set forth in numbered paragraph 13 above, or are conveyed in Section 1.1(r) of the Purchase Agreement (collectively, the "Retained Actions"), provided, however, that nothing herein shall deprive Entropic of the protections afforded by 11 U.S.C. §363(m).

15.    **No Waiver**.  Nothing in this Order or the Purchase Agreement shall be admissible in, or operate in any way to release, limit, preclude, or hinder the investigation or pursuit of the Retained Actions, and no waiver, assignment or release of any of the Retained Actions, shall be construed or implied on the part of any person or entity or statutory committee appointed in either of these cases by entry of this order.

16.    **Fees, Expenses and Other Obligations**.  All obligations of the Debtors under the Purchase Agreement, the Ancillary Agreements, and any and all of the documents delivered by the Debtors in connection with the Purchase Agreement, shall be paid in the manner provided in the Purchase Agreement and the Procedures Order, without further order of this Court.  All such obligations shall constitute allowed administrative claims in each of the Debtors' chapter 11 cases, with priority administrative expense under section 507(a)(2) of the Bankruptcy Code. Until satisfied, all such obligations shall continue to have the protections provided in this Sale Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with Entropic.

17.    **No Material Modifications**.  The Purchase Agreement, Ancillary Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented by the Debtors and Entropic, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, *provided* that any (a) such

modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between the Debtors and Entropic and (b) such modification, amendment or supplement is filed with the Bankruptcy Court and provided on forty-eight (48) hours prior notice to its effectiveness to counsel for the Official Committee of Unsecured Creditors, counsel for the Official Committee of Equity Security Holders and to the Office of the United States Trustee.  At the sole discretion of Entropic, the Debtors and Entropic are expressly authorized, without further order of the Bankruptcy Court, to execute an amendment to the Purchase Agreement to provide for the Closing to occur on one or more Closing Dates so long as the amendment to the Purchase Agreement is filed with the Bankruptcy Court. Any material modification, amendment, or supplement to the Purchase Agreement must be approved by Order of the Bankruptcy Court following a motion on notice to all interested parties.

18.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

19.    **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for ten (10) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the ten (10) day stay provided in such rules is hereby expressly waived and shall not apply.  Time is of the essence in approving the Transactions, and the Debtors and Entropic intend to close the Transactions as soon as practicable.

20.    **Cayman Sale Order Recognition**.  The Debtors are hereby authorized to

consummate and otherwise perform any necessary transaction contemplated and approved by the

Cayman Sale Order.

21.    **Closing Conditions and Termination Rights**.  Nothing in this Sale Order shall

modify or waive any closing conditions or termination rights in the Purchase Agreement, and all

such conditions and rights shall remain in full force and effect in accordance with their terms.

22.    **Allocation**.  The sale proceeds shall be held in the U.S. bank account of Debtor

Trident Microsystems (Far East) Ltd.  Neither this Order nor the Purchase Agreement shall have

any evidentiary or other preclusive effect upon the allocation of the sale proceeds among the

Sellers and their estates pending agreement of the interested parties or further order of the Court

upon notice to the Debtors, the Official Committee of Unsecured Creditors, Equity Committee

and the Office of the United States Trustee.

23.    **Retention of Jurisdiction**.  This Court retains jurisdiction, to the maximum

extent permissible under the law, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2),

to, among other things, interpret, implement, and enforce the terms and provisions of this Sale

Order, all amendments thereto and any waivers and consents thereunder, including, but not

limited to, retaining jurisdiction to (i) compel delivery of the STB Assets to Entropic, (ii)

interpret, implement and enforce the provisions of the Procedures Order, this Sale Order, and any

related order; (iii) protect Entropic, its affiliates, partners, principals or shareholders against any

Interests against the Debtors or the STB Assets of any kind or nature whatsoever, including,

without limitation, through the grant of declaratory and injunctive relief determining that

Entropic, its affiliates, partners, principals or shareholders and their assets (including the STB

Assets) are not subject to such Interests and prohibiting persons and entities from asserting such

Interests against Entropic, its affiliates, partners, principals or shareholders and their assets (including the STB Assets), and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Executory Contracts that Entropic elects to have assumed and assigned to it and the Real Property Leases.

24.     **Conflict**. To the extent there exists any conflict between this Order and any provision of the Motion or the Ancillary Documents (including the Purchase Agreement), this Order shall govern and control.

25.     **CAL and CCAD**.  Notwithstanding anything to the contrary in this Order, with respect to the Debtors' Assumed Contracts with Conditional Access Licensing, LLC ("CAL") and Combined Conditional Access Development and Support, LLC ("CCAD")  only, the assumption and assignment of such contracts provided for herein and the consent of CAL and CCAD to such assumption and assignment shall be without prejudice to and shall not be deemed a waiver of any claims that CAL or CCAD may have under the applicable Assumed Contract(s) that either (i) arose on or before February 15, 2012 and as of February 15, 2012 could not have been known by CAL or CCAD (as applicable) with reasonable diligence, or (ii) arose or became fixed or liquidated after February 15, 2012 but on or before the date of closing of the Successful Bidder's Asset Purchase Agreement (and based on the information known to CAL or CCAD (as applicable), could not have been fixed or liquidated prior to February 15, 2012).  Any such valid claims described in clause (i) or (ii) shall be payable as an administrative expense and/or as a cure of a default under such Assumed Contract(s).

26.     **First Quarter Royalties**.  Notwithstanding anything to the contrary in this Order, with respect to royalties that have accrued during the first quarter of 2012, the Debtors shall make such payments to the applicable counter-parties to the Assumed Contracts, and Entropic

shall reimburse the Debtors for such portion of the royalties accruing subsequent to the closing. Entropic shall provide the Debtors with sale reports of sales from the date of closing through March 31, 2012 no later than April 6, 2012.

27.    **ARM**.  The Debtors' royalty-related records related to ARM Limited ("ARM") shall be transferred to Entropic and such records will be preserved to allow ARM to audit such records in accordance with the Technology License Agreement, dated November 9, 2010. Notwithstanding anything to the contrary in this Order, the Debtors shall not be authorized to assume and assign any of the Assumed Contracts with ARM unless the Cure Amount due to ARM is paid on or before March 31, 2012, unless otherwise  agreed to in writing by ARM.

28.    **Nagravision**.  Notwithstanding anything to the contrary in this Order, with respect to equipment rental fees that have accrued during the first quarter of 2012 and will be owed to Nagravision S.A., the Debtors shall make such payments to Nagravision S.A., and Entropic shall reimburse the Debtors for such portion of such rental fees accruing subsequent to the closing.

29.    **Cadence**.  The objection of Cadence Designs Systems, Inc., (together with its affiliates and subsidiaries, "Cadence") is sustained.  The Debtors shall not assume any Assumed Contracts with Cadence without further order of this Court.

30.    **Synopsys**.  Notwithstanding anything to the contrary in this Order, with respect to any Assumed Contract(s) with Synopsys, Inc. and Synopsys International Limited (collectively, "Synopsys"), assumption and assignment of such contracts shall not be effective without the consent of Synopsys.

31.    **Philips**.  To resolve the *Limited Objection of Koninklijke Philips Electronics N.V.* ("Philips") *to the Debtors' Sale of Certain of Their Assets Related to Their Set Top Business*, the

TMFE shall assume the Divested Company Agreement, dated May 11, 2011, (effective as of February 8, 2010) between Philips and TMFE.  TMFE shall pay Philips $1,080,000 to cure the existing defaults thereunder.

32.    **Microsoft**. *Microsoft's Limited Objection in Response to Motion of the Debtors Requesting, Inter Alia, Approval of Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases and Authorizing the Sale of Certain of the Debtors' Assets* ("Microsoft's Limited Objection") ( Dkt. 235) is hereby sustained.  Nothing in this Order shall be construed as permitting the transfer of any Microsoft software licensed to the debtors pursuant to that certain License described in Microsoft's Limited Objection unless the prior written consent of Microsoft is first obtained, and subject to any agreed terms and conditions on the transfer of such software, including payment of cure and provision of adequate assurance of future performance pursuant to section 365, as applicable.  Until Microsoft's consent to a transfer of its licensed software is obtained, the Debtors shall not deliver to Entropic any computers on which the licensed software is installed without first removing such licensed software from those computers.

Dated:    March 9, 2012
          Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge